## Case No. 7,773.

### KIMBALL et al. v. The DISPATCH.

[5 West. Law Month. 209.]

District Court, D. Maine. Sept., 1863.

SHIPPING — POWERS OF MASTER AND OF SHIP'S HUSBAND—TOWAGE CONTRACT.

[1. The master of a merchant steamer engaged in the transportation of merchandise has no authority to bind the ship by entering into a contract to tow another vessel on a long ocean voyage, as from Nassau to New York; and for breach of such a contract, when made and entered upon, he alone is liable.]

[2. A ship's husband cannot delegate his powers to the master; and if the latter, in his own name, enter into a contract of towage which is beyond his authority, the fact that the ship's husband assumed to authorize him to do so does not validate the contract so as to make it bind the ship.]

[Libel by Otis Kimball and Augustus Arnold against the steamship Dispatch and Benjamin Buck, master.]

Mr. Hawkins, for libellants.

Mr. Whitehead and Mr. Benedict, for claimants and respondents.

SHIPMAN, District Judge. This is a suit against the steamship Dispatch, and against Benjamin Buck, who was her master at the time of the acts complained of in the libel. The libellants are citizens of Maine, in the United States, and in the summer of 1862 were merchants at Nassau, in the island of New Providence. A short time prior to the month of August, 1862, the libellants became the owners of the steamship Karnak, then lying at the port of Nassau in a disabled condition. Part of her machinery being gone, and no means of supplying it, or other needed repairs, at the island, the owners were desirous of having her taken to New York, where she could be put in order. For this purpose, on the 9th day of August, 1862, they entered into articles of agreement under seal with Benjamin Buck, master of the British steamer Dispatch, then in the port of Nassau, by which Buck agreed to use his best endeavors to tow the Karnak to New York. The libel alleges that Buck failed to perform the agreement, and that in consequence the libellants have suffered large damages. I think the libellants have made out a clear

case on this point. The Dispatch took the Karnak in tow, and proceeded with her to sea on the way toward New York, but, after being out one day, returned to Nassau on the alleged ground that her coal would not burn freely enough to enable her to proceed with sufficient velocity to insure her reaching New York before it would become exhausted. She changed her coal at Nassau, and proceeded to sea again, with the Karnak in tow, ostensibly for New York. After being out several days, those in charge of the Dispatch notified those on board of the Karnak that they should cast off the lines, and leave the latter to her fate. Against this, one of the owners of the Karnak, who was on board, earnestly remonstrated. Finally, after much discussion, the Dispatch towed the Karnak toward Port Royal, South Carolina, and when several miles from the latter place cast her off, leaving her to find her way into port as best she might, the Dispatch proceeding on her way to New York. The Karnak, with the aid of very imperfect sails, and the assistance of another vessel, finally reached Port Royal. After the Dispatch reached New York, this suit was instituted by the libellants, to recover damages for the breach of the agreement. That this agreement was broken by Buck I have no doubt. His conduct in casting off the Karnak was in violation of his contract, and without any substantial excuse. It was done under circumstances and pretenses which cast grave suspicions on his good faith, and which justify the conclusion that he had other reasons for his conduct than those which he has set up.

But a graver question arises in this case, and that is whether the agreement entered into by Capt. Buck bound his ship so that the latter is liable to respond in damages. The Dispatch was owned by Messrs. Edward and John T. Lawrence, of Liverpool, who have filed their claim and answer, denying the liability of their ship for any breach of this contract, or for the acts of Capt. Buck in that behalf.

It is obvious that the first point in controversy in this part of the case is whether Capt. Buck had authority to bind his ship to the performance of a contract of this character. It is insisted that this agreement was within the scope of his powers as master, being, as such, the general agent of the owners in their absence. There is no fact in the proofs which would justify the court in concluding that Capt. Buck had been invested by the owners of the Dispatch with any more than the ordinary powers of a shipmaster. The law defines in general terms what the powers of a shipmaster are, and furnishes the rule by which to determine whether a given act is within the scope of his agency. These powers are enumerated in Story on Agency, and their limitations stated (sections 116–124): "The incidental powers of a master are restricted to those

which belong to the usual employment or business of the ship. Thus, if the ordinary employment of the ship has been the carrying cargoes on the sole account of the owner, the master has no implied authority to let the ship to freight in a foreign port." So, if the ordinary employment has been to take goods on board on freight as a general ship and common carrier, the master will not be presumed to possess authority to let the ship on a charter party for a special and different business. So, if the ship has been accustomed to carry passengers only, the master will not be presumed to possess authority to take goods on board on freight. So, if the ship has been accustomed to the coasting trade, or the fisheries, or to river navigation only, the master will not be presumed to possess authority to divert the ship into another trade or business or voyage on the high seas. Story, Ag. 121. See, also, 1 Liv. Prin. & Ag. pp. 155, 156; King v. Lenox, 19 Johns. 235; Peters v. Ballistier, 3 Pick. 495. The authorities are numerous on this point, but the principle is so fundamental and elementary as not to require more citations.

Now, so far as the employment of this ship (the Dispatch) is shown by the proofs, it is that of a merchant vessel, engaged in the transportation of merchandise. There is not a solitary fact appearing in the evidence that towing vessels on long ocean voyages, from one port to another, was ever contemplated by the owners. There is no evidence of any express authority from the owners to Capt. Buck to employ her on that business. No such authority can be implied from his position as master. It was a special business, different from that in which the ship had been engaged, and wholly foreign to that of a trading vessel. Upon the facts before the court, no conclusion can be arrived at than that the captain exceeded his powers as master and agent of the owners, by diverting the ship from the employment in which she had been engaged. Of course, in doing so, he could bind himself, but not the ship. Having exceeded his authority, he, and he alone, is liable.

It is said that Capt. Buck, before he entered upon this voyage, and while employed by other parties, had been engaged in towing vessels to a considerable extent, and the court is asked to presume that the owners of the Dispatch employed him for that purpose. But this does not follow by any means. The antecedent employment of an agent is no ground upon which to test the scope of his agency. The special employment of shipmasters often changes. If a master has followed whaling or sea fishing all his life, and is then put in command of a regular merchant trader from New York to Liverpool, it could hardly be urged that his experience in these prior occupations would authorize him to divert his trading ship into a whaling or sealing voyage, and bind his owners by contracts for that purpose.

It appears from the proofs in this case that one Thomas Taylor accompanied the ship from Liverpool to Nassau, and that he assumed to act at the latter place, as well as in New York, as her agent and the agent of the owners. As the precise authority or official relation of Taylor to the ship is not shown, he must be regarded, in view of his acts, as a supercargo or ship's husband. There is certainly no evidence which would warrant the court to conclude that his powers exceeded the latter. The powers of a ship's husband are extensive, and his responsibilities large. Where they are not defined by a written grant, they will be fixed by law. Whether, in the absence of any special authority, they would authorize him to divert the ship from her usual employment, it is not necessary here to determine. We will assume, for the purposes of this case, that Thomas Taylor was not only the ship's husband, but that he had power to let her to the libellants for the particular service of towing the Karnak to New York. He had, however, no power to delegate this authority to another. A ship's husband cannot delegate his power. Bell, Princ. 449. All Taylor assumed to do was to authorize Capt. Buck to execute and to attempt to perform this contract. This the court cannot assume that he had the power to do, from any facts which appear in the proofs. If the libellants regarded Taylor as acting in the capacity of ship's husband, or general agent of the owners, they should have dealt with him as such, and required him to sign the contract. They are presumed to know the law, which does not allow the ship's husband to transfer his powers to the master. It follows from these views that the contract entered into by Capt. Buck, and upon which this libel so far as it proceeds in rem, is founded, was one by which he had no power to bind the ship, and she must therefore be discharged. I have not dwelt upon the fact that the agreement is under seal, and is executed in the name of the captain, and not in the names of the owners, and may therefore be open to the objection that a shipmaster cannot bind his owners by an instrument under seal, and that, if he can, he can do so only by using their names as principals in the instrument itself. 7 Term R. 209; 6 Greenl. 60; Andrews v. Estes, 2 Fairf. [11 Me.] 267; Meyer v. Barker, 6 Bin. 228. As the other points are decisive of the case, I have not passed upon these last named.

Let a decree be entered against the respondent Buck, in favor of the libellants, with an order of reference to a commissioner to ascertain the damages. The libel, as against the steamship Dispatch, must be dismissed, with costs. Let the decree be entered accordingly.

KIMBALL (LIGHTNER v.). See Case No. 8,345.